**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| WELDED CONSTRUCTION, L.P., *et al.* | : | Case No. 18-12378 (KG) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| ——————————————— | : | |
| WELDED CONSTRUCTION, L.P., | : | |
| | : | |
| Plaintiff, | : | |
| | : | Adversary No. 19-50194 (KG) |
| v. | : | |
| | : | Re: D.I. 24 |
| THE WILLIAMS COMPANIES, INC., | : | |
| WILLIAMS PARTNERS OPERATING LLC, | : | |
| and TRANSCONTINENTAL GAS PIPE LINE | : | |
| COMPANY, LLC, | : | |
| | : | |
| Defendants. | : | |
| ——————————————— | : | |

## OPINION

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Sean M. Beach, Esquire (DE Bar No. 4070) (sbeach@ycst.com)
Kevin A. Guerke, Esquire (DE Bar No. 4096) (kguerke@ycst.com)
Michael S. Neiburg, Esquire (DE Bar No. 5275) (mneiburg@ycst.com)
Travis G. Buchanan, Esquire (DE Bar No. 5595) (tbuchanan@ycst.com)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: 302-571-6600

*Counsel to the Debtors*

SAUL, EWING ARNSTEIN & LEHR LLP
Lucian B. Murley, Esquire (DE Bar No. 4892)
1201 North Market Street, Suite 2300
P. O. Box 1266
Wilmington, DE 19899
Telephone: 302-421-6898
luke.murley@saul.com

HALL ESTILL
Steven Soulé, Esquire
John F. Heil, III, Esquire
320 South Boston Avenue, Suite 200
Tulsa, OK 74103-3706
Telephone: 918-594-0466/0480
ssoule@hallestill.com
jheil@hallestill.com

*Counsel for Defendants The Williams Companies, Inc., Williams Partners Operating LLC, and*
*Transcontinental Gas Pipe Line Company, LLC*

## Introduction

A complex contractual payment mechanism and a robust disagreement as to the interpretation it should be afforded lie at the heart of this multi-million-dollar dispute that allegedly plunged Debtors into chapter 11. Resolution of the issues presented today will determine whether the Court will hear and decide this Adversary Proceeding and, if so, which specific causes of action the Court will evaluate when making a determination on the merits.

Before the Court is a three-part motion by the Defendants seeking to have the Court either abstain from exercising jurisdiction, transfer venue, or altogether dismiss certain claims asserted by the Debtor in connection with the parties' pre-petition actions. For the reasons discussed below, the Court will deny Defendants' Motion to Abstain and Motion to Transfer Venue and will grant, in part, and deny, in part, Defendants' Motion to Dismiss.

## Facts[1]

The Debtors[2] filed their bankruptcy petitions on October 22, 2018. Compl. ¶ 62. Debtor Welded Construction, L.P. ("Welded", "Debtor", or "Plaintiff") commenced the instant Adversary Proceeding on May 3, 2019 against Defendants Transcontinental Gas Pipe Line Company, LLC ("Defendant Transco" or "Transco"), Williams Partners Operating, LLC ("Defendant Williams Partners" or "Williams Partners"), and The Williams Companies, Inc. ("Defendant Williams Co." or "Williams Co.") (collectively, the "Defendants" or "Williams").[3] Welded initiated the Adversary Proceeding with its complaint (the "Complaint" or "Compl.") alleging several causes of action against the Defendants as well as objections to two proofs of claim filed by Transco. In response to the Complaint, Defendants have moved for the Court to either abstain from jurisdiction, transfer venue, or dismiss certain counts found in the Complaint.

---

[1] For the Motion to Dismiss, the Court will look only to the facts contained in the Complaint and will accept all well-pleaded facts as true. For the Motion to Transfer Venue and Motion to Abstain, the Court will look beyond the Complaint as is necessary.

[2] The Debtors in these chapter 11 cases are Welded Construction, L.P. and Welded Construction Michigan, LLC. Welded Construction, L.P. is a Delaware limited partnership with its principal place of business in Ohio. Compl ¶ 2.

[3] Transco is a wholly owned subsidiary of Williams Partners D.I. 9. Williams Partners is a wholly owned subsidiary of Williams Co. D.I. 9. All three are Delaware entities with their principal places of business in Oklahoma. Compl. ¶¶3–5.

Contractual Relationship

Welded's relationship with Defendants arise out of Welded's contract with Transco. On or about November 5, 2015, Welded and Transco executed a letter of intent for Welded to construct a portion of the Atlantic Sunrise pipeline, a natural-gas pipeline connecting gas-producing regions in Pennsylvania to markets in the Mid-Atlantic and southern states (the "Pipeline"). Compl. ¶ 11. On or about August 10, 2016, Welded and Transco executed a construction contract (the "Contract"). Compl. ¶ 14. Pursuant to the Contract, Welded was responsible for the construction of three contiguous segments of the Pipeline—Spreads 5, 6, and 7—which covered more than half the length of the entire Pipeline, approximately 96 miles total. Compl. ¶ 17. Included in the Contract is a choice of law provision and forum selection clause stating that Oklahoma law governs the Contract and that jurisdiction and venue shall lie exclusively with the appropriate courts of Tulsa County, Oklahoma. Compl. Ex. 2, § I, Art. 35.

Pipeline Completion

Welded achieved mechanical completion of Spreads 5, 6, and 7 on September 19, 2018. Compl. ¶ 19. On October 4, 2018, Williams received FERC approval to put the Pipeline into full service. Compl. ¶ 19. The Pipeline was placed into full service on October 6, 2018. Compl. ¶ 20. Completion of the Pipeline increased the capacity of the Transco pipeline by approximately 12%, or 1.7 billion cubic feet per day, and provides Transco with $35 million in revenue per month. Compl. ¶¶ 20–21.

Contract Payment Mechanism

The Contract contains a detailed payment mechanism in Appendix G. Compl. ¶ 30.[4] Under the Contract, each month Welded would send Transco an invoice with an estimate of the funds required for the following month (the "Pay Month"). Compl. ¶ 31. This invoice was to be sent to Transco by the fifth day of the month. Compl. Ex. 2, Appendix G, § 1.2.2. On or before the fifth day of the Pay Month, Transco was to pay Welded the undisputed amounts invoiced. Compl. ¶ 32; Compl. Ex. 2, Appendix G, § 1.2.3. Within thirty days of the Pay Month, Welded would provide Transco with a written reconciliation of its actual verses estimated expenditures and Welded would

---

[4] Section I, Article 3, Subsection A of the Contract, entitled Invoicing and Payment of Invoices, states, "Project invoicing and payment of invoices shall be processed and paid in accordance with Appendix G, Invoicing and Payment of Invoices". Compl. Ex 2, § I, Art. 3, Subsection A.

then true-up the amounts owed or owing in future invoices. Compl. ¶ 38; Compl. Ex. 2, Appendix G, § 1.2.4.

The Contract anticipated disputes over invoicing. Section 1.2.3 of Appendix G to the Contract states,

> "On or before the fifth day of the Pay Month, Company will pay Contractor the undisputed amounts invoiced. In the event that Company disputes a portion of Contractor's invoice, the Parties will work diligently to resolve any disputed amounts prior to the date for payment of such invoice. Any amounts that are not resolved within ten business (10) days of the date on which payment of the invoice was due will immediately be escalated to senior management for a discussion as soon as reasonably possible. If the matter remains unresolved after the senior management discussion, the matter will be resolved in accordance with the provisions of Article 37 of Section I of the Contract and paid in accordance with the terms of such resolution."

Compl. Ex. 2, Appendix G, § 1.2.3. Article 37 of Section I of the Contract states, "Company and Contractor shall give good faith consideration to using alternative dispute resolution prior to or in lieu of litigation to resolve disputes arising under or in connection with this Contract." Compl. Ex 2, Article 37.

The Contract also contemplated disputes regarding the reconciliation mechanism found in the Contract. Section 1.2.5 of Appendix G to the Contract states, "Any differences between the Parties related to verifying actual expenditures or invoices and adjusting against forecast and funded amounts shall be reconciled within one pay period, provided, however, that such differences will not interrupt the payment of Contractor's undisputed invoices, as set out herein." Compl. Ex. 2, Appendix G, § 1.2.5.

Dispute Over Whether Certain Fees are Properly Billable under the Contract

For the first ten months, Welded was paid for their invoices without dispute. Compl. ¶¶ 41–43. However, on July 3, 2018, R. Christopher Springer, Transco's Atlantic Sunrise Project Director ("Mr. Springer"), sent a letter to Stephen Hawkins, Welded's President and CEO ("Mr. Hawkins"), stating that Transco was releasing payment to Welded under protest. Compl. ¶ 44. In the email, Mr. Springer indicated the payment was under protest due to "(1) Welded's failure to meet expectations on productivity, work quality, and safe work practices; (2) questions and concerns about the accuracy of billing and Welded's compliance with contract obligations; and

3

(3) uncontrolled growth in Welded's estimate cost of completion." Compl. ¶ 44. The letter further stated, "[T]his payment and any payment made by Transco from this point forward in time are made under protest and shall not be construed as concurrence that Welded has earned invoiced amounts nor that 'true-ups' accurately reflect amounts owed and/or are payable by Transco." Compl. ¶ 44. In his response, Mr. Hawkins sought to understand the basis for Mr. Springer's concern about alleged inaccurate billing and expressed concern that the dispute was not following the agreed upon escalation path found in the Contract. Compl. ¶ 45. Defendants did not respond to Mr. Hawkins' letter or provide any information about the alleged inaccurate billing. Compl. ¶ 46.

In July of 2018, Defendants engaged Oil and Gas Contract Services ("OGCS") to perform an audit to support its accusation of inaccurate billing. Compl. ¶ 47. On July 24 and 25 of 2018, two OGCS employees visited Welded's office and met with Welded's personnel. Compl. ¶ 48. Throughout July, August, and September 2018, Welded worked with OGCS, responding to numerous requests and providing thousands of pages of records, invoices, receipts, paystubs, and other documents. Compl. ¶ 48.

Contract Dispute Leads to Transco Withholding Funds

On October 4, 2018, Transco informed Welded that it was withholding $23,563,538. Compl. ¶ 22. In a letter from Mr. Springer to Mr. Hawkins, Mr. Springer claimed the notice of withholding was given "in accordance with the Contract Audit provisions, Section VIII and Appendix G" of the Contract. Compl. ¶ 54. In justifying the withholding, Mr. Springer remarked, "Based on the ongoing review of Welded's advance payment requests, Welded has erroneously billed Transco for fees and costs in excess of those allowed under the Contract and has failed to properly reconcile the overbillings as contemplated by the Contract." Compl. ¶ 54. Mr. Springer then listed examples that he claimed "represent charges that are disputed by Transco, which have been identified to date." Compl. ¶ 54. The letter further claimed that Welded "owed Transco at least $1,928,571 for delays to the completion date." Compl. ¶ 54. The letter concluded by stating, "Williams intends to withhold [$23,563,538] from the September 2018 advance payment request . . . [and] Transco requests a meeting with Welded next week to discuss this withholding and the findings noted above." Compl. ¶ 54. Also on October 4, 2018, Transco filed a lawsuit in the District Court of Tulsa County for the State of Oklahoma asserting a breach of contract claim against

Welded in the amount of $23,563,538 for improper overbilling and delay damages (the "State Court Action"). Compl. ¶¶ 23, 52.

On October 5, 2018, pursuant to the Contract, Welded submitted an invoice for a true-up payment from Transco in the amount of $16,592,432.09 for costs Welded incurred constructing the Pipeline in August 2018. Compl. ¶ 24. Under the Contract, payment for the true-up invoice was due by November 5, 2018. Compl. ¶ 24. Defendants have refused to pay and have refused to explain or justify their refusal to pay. Compl. ¶ 24. Based on the two initial withholdings in October, Welded alleges that Defendants are unjustifiably and unlawfully withholding $40,155,970.09, in the aggregate, due and owing to Welded under the Contract (the "Initial Withholdings"). Compl. ¶ 26.

In a response dated October 7, 2018 to Mr. Springer's letter dated October 4, 2018, Mr. Hawkins stated, "[W]e categorically disagree with the unfounded allegations of erroneous charges" and explained Welded's position that the invoices sent billed only for fees properly billable under their interpretation of the Contract language. Compl. ¶ 55. Furthermore, Mr. Hawkins explained that "the withholding of the October cash call is of such extreme hardship to Welded that it jeopardizes Welded's ability to continue as a viable business and will preclude the ability to meet payroll liabilities beyond October 07, 2018 . . . ." Compl. ¶ 55. Mr. Springer responded on October 9, 2018, again explaining Transco's position that Welded was improperly overbilling for fees not properly billable under their interpretation of the Contract language. Compl. ¶ 56. Mr. Springer remarked that "by virtue of the audit, substantial additional detailed information has been made available to Transco which was not otherwise ascertainable in Welded's cash calls or reconciliations." Compl. ¶ 56. Mr. Springer also included a copy of the petition in the State Court Action, stating, "We will postpone formally serving the Petition with the hope that our anticipated meeting will be productive." Compl. ¶ 56. On October 11, 2018, Mr. Hawkins emailed Mr. Springer and Evan Kirchen, Williams's Vice President of Engineering & Construction, emphasizing Welded's financial distress and its desperate need to receive payment and explaining that "Welded's ability to meet payroll on your project next week is in jeopardy." Compl. ¶ 57. Mr. Hawkins concluded by pleading that Transco remit the Initial Withholdings immediately "to enable us to continue in operation and resolve the broader issue." Compl. ¶ 57.

On October 16, 2018, Sean Singleton and Marcus Hood, Welded's Project Controls Manager and Senior Project Manager, respectively, met with David Sztroin and John Todd, William's Project Managers, and Adrian Green and Phil Burke from OGCS.   Compl. ¶ 58. It was at this meeting that Williams and OGCS first provided an explanation of the audit findings. Compl. ¶ 58. On October 18, 2018, Mr. Singleton emailed Mr. Green to follow up on the documentation on the audit findings and Mr. Green sent the requested documentation later that day. Compl. ¶ 59. Welded engaged with Williams in an attempt to consensually resolve the dispute and avert the need for a bankruptcy filing. Compl. ¶ 61. Mr. Hawkins repeatedly requested that Williams make payment to Welded. Compl. ¶ 61. William's representatives indicated that Williams was not inclined to make any payments to Welded. Compl. ¶ 61.

On March 4, 2019, Welded submitted an invoice to Transco for a true-up payment in the amount of $17,440,319.90 for costs Welded incurred constructing the Pipeline in September 2018 (the "September True-Up Invoice"). Compl. ¶ 27. On the same day, Welded submitted an invoice for a true-up payment in the amount of $13,713,655.68 for costs Welded incurred constructing the Pipeline in October 2018 (the "October True-Up Invoice"). Compl. ¶ 27. Defendants did not pay either the September or October True-Up Invoices. Compl. ¶ 28. Accordingly, Welded alleges, Defendants are unjustifiably and unlawfully withholding an additional $31,154,048.58, in the aggregate, on account of the September True-Up Invoice and October True-Up Invoice (the "Additional Withholdings" and together with the Initial Withholdings, the "Withheld Funds"). Compl. ¶ 28. Thus, all together, Welded alleges that Defendants are unjustifiably and unlawfully withholding $71,310,018.67, in the aggregate, due and owing to Welded under the Contract. Compl. ¶ 29.

Transco's Proofs of Claim

On February 28, 2019, Transco filed two proofs of claim against Welded. Compl. ¶ 188. Pursuant to claim number 632 ("Claim 632"), Transco contends that it has identified "a number of anomalies/defects covered by Debtor's warranty under the Contract" and seeks damages in the estimated amount of $16,320,000 for costs that Transco contends it will incur in connection with the repair of allegedly defective work performed by Welded. Compl. ¶ 189. Pursuant to claim number 636 ("Claim 636"), Transco contends that Welded is indebted to Transco in the aggregate amount of $94,291,513.58. Compl. ¶ 194. In Claim 636, Transco·asserts the following four general

categories of damages against Welded: (1) allegedly overbilling ($45,611,991.00); (2) purportedly violating municipal regulations and billing for allegedly non-reimbursable expenses ($7,605,609.63); (3) allegedly causing schedule overruns ($1,928,571.00); and (4) allegedly withholding payments to subcontractors and suppliers ($39,145,341.95). Compl. ¶ 194. The items which Transco alleges Welded improperly billed in the first category of damages in its Claim 636 mirror those items for which Welded asserts a breach of contract action in Count I of the Complaint due to alleged improper withholding.

Complaint and Motion

Welded initiated this Adversary Proceeding by filing its Complaint with the Court on May 3, 2019. The Complaint includes 12 counts. Count I seeks to hold Transco liable for an alleged breach of contract. Compl. ¶ 262–69. Count II seeks to hold Transco liable for an alleged breach of the implied covenant of good faith and fair dealing. Compl. ¶ 270–77. Count III seeks to hold Williams Partners and Williams Co. liable for an alleged tortious interference with contractual relationships. Compl. ¶ 278–85. Count IV seeks a turnover against Williams pursuant to Section 542 of the Bankruptcy Code. Compl. ¶ 286–92. Count V seeks a declaratory judgment that Williams violated the automatic stay of Section 362(a)(3) of the Bankruptcy Code. Compl. ¶ 293–301. Count VI seeks a declaratory judgment that Williams engaged in an impermissible setoff in violation of Section 362(a)(7) of the Bankruptcy Code. Compl. ¶ 302–10. Count VII seeks to hold Williams liable for an alleged unjust enrichment. Compl. ¶ 311–14. Counts VIII and IX are objections to Claims 632 and 636, respectively, filed by Transco in the Welded bankruptcy case. Compl. ¶ 315–29. Count X seeks a declaratory judgment that Welded owes no amounts to Transco in connection with post-petition reconciliation. Compl. ¶ 330–40. Count XI seeks to hold Transco liable for an alleged violation of the Pennsylvania Contractor and Subcontractor Payment Act. Compl. ¶ 341–58. Finally, Count XII seeks to hold Williams liable for attorneys' fees. Compl. ¶¶ 359–61.

In response to the Complaint, Defendants filed a motion to abstain from jurisdiction, transfer venue, or partially dismiss certain causes of action in the Complaint (the "Motion"). In its Motion, Defendants seek three forms of relief in the alternative. First, Defendants request that the Court abstain from jurisdiction. Motion at pp. 4–11. Second, Defendants request that the Court transfer venue. Motion at pp. 11–15. Third, Defendants request that the Court dismiss Counts II,

IV, V, VI, and VII for failure to state a claim upon which relief can be granted. Motion at pp. 16–30. It is this Motion which the Court's opinion will address.

## Jurisdiction

The Court has jurisdiction over this Motion. *Giuliano v. Genesis Fin. Solutions, Inc. (In re Axiant, LLC)*, Adv. No. 50526, 2012 WL 5614588, at *1 (Bankr. D. Del. Nov. 15, 2012) ("[T]he Court has the power to enter an order on a motion to dismiss even if the [underlying] matter is not core."); *DHP Holdings II Corp. v. Home Depot, Inc. (In re DHP Holdings II Corp.)*, 435 B.R. 264, 268 (Bankr. D. Del. 2010) ("[T]he Court has jurisdiction over this Motion to transfer venue, which is a core proceeding."); *Brizzolara v. Fisher Pen Co.*, 158 B.R. 761, 767 (Bankr. N.D. Ill. 1993) (holding that "motions for change of venue, abstention, and remand are core proceedings under 28 U.S.C. § 157(b)(2)(A).").

## Discussion

### I. Motion to Abstain

In its three-part Motion, Defendants request that the Court abstain from jurisdiction over this Adversary Proceeding. Motion at p. 1.

Statutory authority for permissive abstention is found in 28 U.S.C. § 1334(c)(1), which states:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

The Court considers twelve factors when determining whether or not to abstain. The factors are:

> (1) The effect or lack thereof on the efficient administration of the estate if the Court abstains; (2) The extent to which state law issues predominate over bankruptcy issues; (3) The difficulty or unsettled nature of applicable state law; (4) The presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) The jurisdictional basis, if any, other than section 1334; (6) The degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) The substance rather than the form of an asserted "core" proceeding; (8) The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) The burden on the bankruptcy court's docket; (10) The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) The existence of a right to a jury trial; and (12) The presence of non-debtor parties.

*Fruit of the Loom, Inc. v. Magnetek, Inc. (In re Fruit of the Loom, Inc.)*, 407 B.R. 593, 599–600 (Bankr. D. Del. 2009).

Interpretations of Section 1334(c)(1) must be informed by the principle that "federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given to them,' and may abstain only for a few 'extraordinary and narrow exception[s].'" *Residential Funding Co. v. UBS Real Estate Secs., Inc. (In re Residential Capital, LLC)*, 515 B.R. 52, 67 (Bankr. S.D.N.Y. 2014) (citing *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 332 (S.D.N.Y.2003) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976))); *see also In re SCH Corp.*, 569 F. App'x 119, 121–22 (3d Cir. 2014). A bankruptcy court's evaluation of these factors is not a mere mathematical exercise, and the decision on permissive abstention is left to the bankruptcy court's broad discretion. *Emerald Capital Advisors Corp. v. Karma Auto. LLC (In re FAH Liquidating Corp.)*, 567 B.R. 464, 471 (Bankr. D. Del. 2017). Furthermore, three factors are given more weight than the others: (1) the effect on the administration of the estate; (2) whether the claim involves only state law issues; and (7) whether the proceeding is core or non-core. *DHP Holdings II*, 435 B.R. at 224. The Court will examine the factors in turn.

### *Factor 1 - The effect or lack thereof on the efficient administration of the estate if the Court abstains*

The first factor pertinent to a permissive abstention discussion is the effect abstention would have on the efficient administration of the estate. Defendants argue this factor favors abstention because the Debtors have no remaining operations, leaving only the remaining tasks of determining the end of the Debtors' cases, liquidating remaining assets, and objecting to claims. Motion at p. 5. The Debtor, citing *Penson Worldwide*, argues that this factor does not favor abstention because the dispute at hand is one which must be resolved in connection with the claims allowance process. Brief in Opposition ("Oppo") at pp. 12–13 (citing *Penson Technologies LLC v. Schonfeld Grp. Holdings LLC (In re Penson Worldwide)*, 587 B.R. 6, 22–23 (Bankr. D. Del. 2018)). The Court agrees with the Debtor.

Defendant Transco has asserted two proofs of claim totaling over $110,000,000. The Debtor has filed the instant complaint alleging breach of contract, among other claims, by the Defendants in conjunction with objections to Defendant Transco's proofs of claim. Ultimately, resolution of the Debtor's complaint and objections will determine whether money will flow from

the estate to Defendants pursuant to the proofs of claim or whether money will flow from the Defendants to the estate pursuant to the instant complaint, which is essentially a counter-claim to Defendant Transco's proofs of claim. Resolution of one necessarily implicates resolution of the other.

Because Transco has filed its proofs of claim, it has subjected itself to the jurisdiction of the Court. It logically and necessarily follows that the Court should exercise its jurisdiction to determine the validity, if any, of the proofs of claim Transco has filed. Transco's pending but stayed breach of contract action in the State Court should not change this result. A bankruptcy court has an inherent responsibility to exercise its jurisdiction to effectuate one of the core features of the bankruptcy process itself – the claims resolution process. Permitting the dispute to be litigated across the country only for the outcome to then be brought back and applied in the Court is anything but efficient where the dispute implicates the claims resolution process. *Davis v. State of California (In re Venoco, LLC)*, 596 B.R. 480, 493 (Bankr. D. Del. 2019) ("This factor clearly weighs in the Trust's favor and against abstention. The Defendants have a claim pending and the Trustee has the adversary proceeding which, if successful, will negate some or all of the claim."); *HQ Glob. Workplaces, Inc. v. Bank of Nova Scotia (In re HQ Glob. Holdings, Inc.)*, 293 B.R. 839, 845 (Bankr. D. Del. 2003) ("Since the instant Adversary Proceeding ultimately involves the allowance of claims against the estate . . . it clearly will have an effect on the administration of the estate."); *Penson Worldwide*, 587 B.R. at 23 ("This adversary proceeding is also an objection to Defendant's proof of claim and . . . the defense to the proof of claim has the same basis as Plaintiff's affirmative claims. This factor does not favor abstention."). Thus, this factor does not favor abstention.

Furthermore, to the extent claims are joined and asserted against Williams Partners and Williams Co., who are parent companies of Transco and who have not filed proofs of claim, those claims are non-core, related to matters. 28 U.S.C. § 157(c)(1); *TTS, Inc. v. Stackfleth (Matter of Total Tech. Servs. Inc.)*, 142 B.R. 96, 99 (Bankr. D. Del. 1992) ("A proceeding is 'related' if 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'") (quoting *Pacor, Inc., v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). However, although non-core matters, the claims against Williams Partners and Williams Co. are so related and inextricably interlinked to the core claims as to necessitate being tried together. These matters

arise out of the same transaction or occurrence and involve common issues and facts. It would be the anthesis of efficient administration to abstain from the same claim against one defendant but not another. As a result, this factor strongly favors not abstaining.

*Factor 2 – The extent to which state law issues predominate over bankruptcy issues*

The second factor pertinent to a permissive abstention discussion is the extent to which state law issues predominate over bankruptcy issues. Defendants argue that this factor favors abstention because at its core the action is a contract dispute to be determined by Oklahoma law. Motion at p. 6. Defendants further urge the Court, when examining this factor, to disregard the more "bankruptcy-law-ish" causes of action the Debtor has brought in Counts IV (turnover under section 542), V (stay violation under section 362), and VI (declaratory judgment under section 362) because they do not sufficiently state a claim upon which relief can be granted. *Id.* Debtor, again citing *Penson*, argues that this factor is not dispositive when the state law issues arise in the context of an objection to a proof of claim. Oppo at p. 13 (citing *Penson Worldwide*, 587 B.R. at 23). The Court agrees with the Debtor.

It is evident that the issues which predominate are state law issues, whether or not the Court disregards Counts IV, V, and VI. Counts I (breach of contract), II (breach of implied covenant of good faith and fair dealing), III (tortious interference with contractual relations), VII (unjust enrichment), X (declaratory judgment for no amounts owed in connection with contract), XI (violation of Pennsylvania Contractor and Subcontractor Payment Act), and XII (attorneys' fees) all implicate state law. In contrast, only Counts IV (turnover), V (declaratory judgment for automatic stay violation), VI (declaratory judgment for impermissible setoff), VIII (objection to claim 632), IX (objection to claim 636) pertain to bankruptcy code creatures. Thus, this factor favors abstention.

However, although this factor weighs in favor of abstention it will not be dispositive in this action. As the *Penson Worldwide* court aptly stated, "[T]he state law issues arise in the context of an objection to a proof of claim and affirmative claims whose resolution will necessarily be resolved in that context. Thus, while this factor favors abstention, it is not dispositive." *Penson Worldwide*, 587 B.R. at 6; *see also Wilson v. Residential Capital, LLC (In re Residential Capital, LLC)*, No. 12-12020 (MG), 2014 WL 3057111, at *2 (Bankr. S.D.N.Y. July 7, 2014) ("While her

possibly surviving claim raises state law issues only, most proofs of claim in bankruptcy cases do so.").

*Factor 3 – The difficulty or unsettled nature of applicable state law*

The third factor pertinent to a permissive abstention discussion is the difficulty or unsettled nature of applicable state law. Defendants concede that there are "no glaring open issues of state law," but cite *Integrated Health Servs.* for the proposition that "where state law issues so predominate the proceeding . . . this factor weighs in favor of having the state court decide it." Motion at pp. 6–7. (citing *Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins (In re Integrated Health Servs., Inc.)*, 291 B.R. 615, 619 (Bankr. D. Del. 2003)). Debtor argues that this factor does not favor abstention because the proceeding does not present novel legal issues, the Court is well-positioned to apply state law, and "using applicable state law to adjudicate core disputes involving state law issues is at the heart of the bankruptcy court's role." Oppo. at p. 13. The Court agrees with Debtor.

The Defendants cite *Integrated* for their position. *Integrated* dealt with a non-core action against directors for breach of fiduciary duty and waste of corporate assets rather than an action pertaining to the claims allowance process. The Court believes this distinction is important. At the heart of the dispute is the contractual agreement between the parties and the dispute as to whether either or both parties breached the agreement, which will determine whether the Defendant Transco's claims against the estate or Debtor's counter-claim against Defendants ultimately prevail. As mentioned above, the dispute also involves other state law causes of action, such as breach of the implied covenant of good faith and fair dealing and tortious interference. The Court is of the view that the state law issues implicated are neither novel nor unsettled, and the Court is familiar with them. *Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp)*, 597 B.R. 235, 248 (Bankr. D. Del. 2019) ("In addition to alter ego, unjust enrichment, and conspiracy, there are several claims pursuant to state versions of the UFTA. Nevertheless, such laws are generally not unsettled or unfamiliar with this Court. Because such issues abound in bankruptcy, they are in this Court's wheelhouse."); *Alderwoods Grp., Inc. v. Charter Funerals, Inc. (In re Loewen Grp. Int'l, Inc.)*, 344 B.R. 727, 730 (Bankr. D. Del. 2006) ("In this case, the claims are straightforward breach of contract issues. They are neither novel or unsettled. This factor does not favor abstention." (quotations omitted) (citations omitted)). Thus, this factor does not favor abstention.

*Factor 4 – The presence of a related proceeding commenced in state court or other non-bankruptcy court*

The fourth factor pertinent to a permissive abstention discussion is the presence of a related proceeding commenced in state court or other non-bankruptcy court. Defendants argue that this factor heavily favors abstention. Motion at p. 7. Debtor argues that this factor does not favor abstention because the Oklahoma court does not have *in personam* jurisdiction over Welded. Oppo. at p. 13. Citing *HQ Global*, Debtor argues that what is relevant to this factor is the status of the other action, and because the Court is alone with personal jurisdiction over both parties, this factor does not favor abstention. *Id.* at p. 13–14 (citing *HQ Glob. Holdings, Inc.*, 293 B.R. at 846). Defendants respond by arguing that only 18 days passed between the filing of the state-court action and the Debtors' bankruptcy filing and the only reason process was not served in that 18 days was because Defendants were waiting to serve process until after Debtor and Defendants were scheduled to have a meeting. Reply at p. 4. The Court agrees with Defendants.

The Court finds that this factor weighs in favor of abstention. Although the Debtor is correct that process has not yet been served in the state-court action, the Debtor does not argue that the State Court could never obtain personal jurisdiction over the parties, just that it has not done so at this time. Hypothetically, if the Court were to abstain, transfer venue, and/or dismiss, the State Court could easily obtain personal jurisdiction over Debtor. Nonetheless, there is no doubt that there is a proceeding related to this instant one that is currently pending before the State Court. Thus, this factor favors abstention.

*Factor 5 – The jurisdictional basis, if any, other than section 1334*

The fifth factor pertinent to a permissive abstention discussion is the jurisdictional basis, if any, other than section 1334. Both parties concede there is no jurisdictional basis other than section 1334. Motion at p. 7; Oppo. at p. 14. Thus, this factor favors abstention.

*Factor 6 – The degree of relatedness or remoteness of the proceeding to the main bankruptcy case*

The sixth factor pertinent to a permissive abstention discussion is the degree of relatedness or remoteness of the proceeding to the main bankruptcy case. Defendants, citing *Integrated* and *DHP II*, argue this factor favors abstention because the proceeding "will be decided without reference to the Bankruptcy Code or Federal Rules of Bankruptcy Procedure" and "at most . . . will have a collateral effect in the main bankruptcy case." Motion at pp. 7–8 (citing *DHP Holdings*

*II*, 435 B.R. at 228); Reply at pp. 8–9 (citing *Integrated Health Servs.*, 291 B.R. at 620). Defendants further argue that "the mere fact that the outcome of this adversary proceeding will affect the estates is not enough to deny abstention." Motion at pp. 7–8. In contrast, Debtor argues that this factor does not favor abstention because any success by Debtor in this proceeding will benefit Debtor's creditor base and, citing *Penson Worldwide*, "rulings on claims against the estate are intimately related to the bankruptcy proceedings." Oppo. at pp. 14–15 (citing *Penson Worldwide*, 587 B.R. at 23). The Court agrees with the Debtor.

First, both cases cited by the Defendants are distinguishable. *Integrated* pertained to a non-core action against corporate directors for breach of fiduciary duty and corporate waste as opposed to a core action pertaining to the claims resolution process, as is present here. *DHP II* concerned a creditor who never filed a proof of claim, and thus the claims resolution process was not triggered there as it is here. Second, and as explained above, this proceeding is essentially an objection to proofs of claim filed by and counter-claims against the Defendants. Because this inherently triggers one of the bankruptcy process's core features – the claims resolution process – the Court finds this proceeding is related to the main bankruptcy case. *Penson Worldwide*, 587 B.R. at 23 ("Rulings on claims against the estate are 'intimately related to the bankruptcy proceedings.' This factor does not favor abstention."); *HQ Glob. Holdings, Inc.*, 293 B.R. at 846 ("[T]he issues involved in the Adversary Proceeding are intimately related to the bankruptcy proceeding as they involve the determination of claims against the estate."). Thus, this factor does not favor abstention.

### Factor 7 – The substance rather than the form of an asserted "core" proceeding

The seventh factor pertinent to a permissive abstention discussion is the substance rather than the form of an asserted "core" proceeding. Defendants argue that this factor favors abstention. In doing so, Defendants request the Court to disregard Counts IV, V, and VI when making the determination as they "appear to be designed only to invoke the Bankruptcy Code and therefore shoehorn this into a 'core' proceeding." Motion at p. 8. In contrast, Debtor argues that this factor does not favor abstention because the allowance or disallowance of claims against the estate is a "fundamentally core proceeding." Oppo. at p. 15.

The Court finds that this factor is neutral. Like in *Penson Worldwide*, this action contains a state law contract dispute with other causes of action derived from the contractual relationship,

but is also an objection to claims of and counter-claims against the Defendants. *Penson Worldwide*, 587 B.R. at 24. Thus, this factor is neutral and neither favors nor disfavors abstention.

*Factor 8 – The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court*

The eighth factor pertinent to a permissive abstention discussion is the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court. The Defendants argue this factor favors abstention because the parties' rights under the Contract and state law could be determined in the State Court, leaving enforcement of the State Court's determination to the Court. Motion at p. 8. The Debtor, again citing *Penson Worldwide*, argues this factor does not favor abstention because "it would be impossible to sever Welded's state law counterclaims from its objections to the [proofs of claim], the allowance or disallowance of which is a core matter." Oppo. at p. 16 (citing *Penson Worldwide*, 587 B.R. at 24). The Court agrees with Debtor. *Penson Worldwide*, 587 B.R. at 24 ("It is not feasible to sever Penson's state-law counterclaim from Schonfeld's proof of claim, the allowance or disallowance of which is a core matter. This factor does not favor abstention."). Thus, this factor does not favor abstention.

*Factor 9 – The burden on the bankruptcy court's docket*

The ninth factor pertinent to a permissive abstention discussion is the burden on the bankruptcy court's docket. The Court is hesitant to opine on the burden abstention would befall on the State Court's docket. Furthermore, the Defendants have failed to show that the State Court's docket is less burdensome than the docket of the Court. Thus, this factor is neutral and neither favors nor disfavors abstention. *Wallen v. Tauren Exploration, Inc. (In re Cubic Energy, Inc.)*, 603 B.R. 743, 756 (Bankr. D. Del. 2019) ("The question of docket burden is neutral, as the burden would eventually fall on *some* court and this Court can not ascertain the degree of burden the Texas court would suffer would this Court abstain.").

*Factor 10 – The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties*

The tenth factor pertinent to a permissive abstention discussion is the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties. The Defendants argue that this factor favors abstention due to the existence of a forum

15

selection clause in the Contract choosing Oklahoma as the proper venue. Motion at p. 9. The Debtor argues that this factor does not favor abstention because Defendant Transco voluntarily filed proofs of claim against Debtor and the intertwining nature of the proofs of claim and Debtor's counterclaims. Oppo. at pp. 16–17. The Court agrees with Debtor. *Penson Worldwide*, 587 B.R. at 24 ("Defendant voluntarily filed its proof of claim . . . it was appropriate, therefore, for Plaintiff to object to Defendant's proof of claim and bring its affirmative claims in one proceeding, and in this court."); *HQ Glob. Holdings, Inc.*, 293 B.R. at 847; *Venoco, LLC*, 596 B.R. at 493 ("[T]he Trustee filed the adversary proceeding in the bankruptcy court because there was a case and a proof of claim already present here."). Thus, this factor does not favor abstention.

*Factor 11 – The existence of a right to a jury trial*

The eleventh factor pertinent to a permissive abstention discussion is the existence of a right to a jury trial. Defendants argue that this factor favors abstention because despite the filed proofs of claim, Transco has not waived its right to a jury trial in the State Court Action. Motion at p. 9. Debtor argues that this factor does not favor abstention because Transco has waived its right to a jury trial by virtue of having filed the proofs of claim and the core nature of the contractual dispute. Oppo. at p. 17. Because the Court is not authorized to conduct jury trials, this factor might favor abstention. *See LaRoche Indus., Inc. v. Orica Nitrogen LLC (In re LaRouche Indus., Inc.)*, 312 B.R. 249, 255 (Bankr. D. Del. 2004). Although the Debtor disputes Defendant's right to a jury trial, the Court finds it unnecessary to decide that issue since the other factors favoring non-abstention are strong. *Id.*

*Factor 12 – The presence of non-debtor parties*

The twelfth factor pertinent to a permissive abstention discussion is the presence of non-debtor parties. Both the Defendants and Debtor argue this factor is neutral as there are three non-debtor Defendants and one debtor Plaintiff. Motion at p. 10; Oppo. at p. 17. The Court agrees. This factor is neutral and neither favors nor disfavors abstention.

Ultimately, although this is a difficult decision, the Court denies the Motion to Abstain. After a close examination of the twelve factors with an emphasis on the factors it considers most important, the Court concludes that it would be inappropriate to abstain. As the Court once stated in *Venoco*, the *Penson Worldwide* court stated the Court's conclusion very aptly when it wrote:

Fundamentally, this adversary proceeding involves an objection to a proof of claim. That it involves resolution of state law issues is thus unremarkable. The state law issues are not complex, and judicial economy suggests that the objection to the proof of claim and Plaintiff's counterclaims—which are inextricably interlinked with Defendant's proof of claim—be resolved by one court. That court should be the bankruptcy court as the claim allowance process is a quintessential bankruptcy court function. None of the factors that favor abstention convince me that, in this particular case, the interests of justice merits a different outcome. As a result, I decline to abstain.

*Penson Worldwide*, 587 B.R. at 24; *Venoco, LLC*, 596 B.R. at 493–94.

## II.  Motion to Transfer Venue

In its three-part Motion, Defendants seek to transfer venue of this adversary proceeding to an Oklahoma federal court. Motion at p. 1.

The Court must first begin with the statutory provisions governing transfer of venue. First, 28 U.S.C. § 1412 states, "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. Second, 28 U.S.C. § 1404(a) states, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The analysis under either section is essentially the same, turning on the same issues of 'the interest of justice' and 'the convenience of the parties,' except that section 1412 does not require that the action could have been brought in the transferee district." *DHP Holdings II*, 435 B.R. at 268–69; *Hechinger Liquidation Trust v. Fox (In re Hechinger Inv. Co. of Delaware, Inc.)*, 296 B.R. 323, 325 (Bankr. D. Del. 2003) ("A determination of whether to transfer venue under § 1412 turns on the same issues as a determination under § 1404(a) . . . .") (citing *Son v. Coal Equity, Inc. (In re Centennial Coal, Inc.)*, 282 B.R. 140, 144 (Bankr. D. Del. 2002)).

The Court notes that throughout the Motion, the Defendants interchangeably request that the Court transfer the case to the State Court or an Oklahoma federal court. The applicable venue transfer statutes authorize the Court to transfer the adversary proceeding to a United States Bankruptcy Court. *In re Henderson*, 197 B.R. 147, 153–54 (Bankr. N.D. Ala. 1996); *In re Leonard*, 55 B.R. 106, 109 (Bankr. D. D. C. 1985); *Jim Walter Res., Inc., v. Belcher (In re Hillsborough Holdings Corp.)*, 146 B.R. 1008, 1010 (Bankr. M.D. Fla. 1992); *Koken v. Reliance Grp. Holdings, Inc. (In re Reliance Grp. Holdings, Inc.)*, 273 B.R. 374, 382 (Bankr. E.D. Pa. 2002) ("Debtor's

Venue Motions will be granted . . . [and] will be transferred to the New York Bankruptcy Court."); *Lipshie v. AM Cable TV Indus., Inc. (In re Geauga Trenching Corp.)*, 110 B.R. 638, 657–58 (Bankr. E.D.N.Y. 1990) ("We will grant [the] venue objection and transfer the venue of this proceeding to the Bankruptcy Court for the Southern District of Florida . . . ."). Thus, for purposes of analyzing the Motion, the Court will treat the Defendants' arguments for transferring venue to the State Court as arguments for transferring venue to the United States Bankruptcy Court for the Northern District of Oklahoma.

In deciding a motion for transfer of venue, courts in the Third Circuit have considered several factors, including:

> (1) plaintiff's choice of forum, (2) defendant's forum preference, (3) whether the claim arose elsewhere, (4) location of books and records and/or the possibility of viewing the premises if applicable, (5) the convenience of the parties as indicated by their relative physical and financial condition, (6) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, (7) the enforceability of the judgment, (8) practical considerations that would make the trial easy, expeditious, or inexpensive, (9) the relative administrative difficulty in the two fora resulting from congestion of the courts' dockets, (10) the public policies of the fora, (11) the familiarity of the judge with the applicable state law, and (12) the local interest in deciding local controversies at home.

*Hechinger*, 296 B.R. at 325–26 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80).

The burden of demonstrating that the factors weigh in favor of venue transfer is on the moving party. *Barry v. Santander Bank, N.A. (In re Liberty State Benefits of Delaware, Inc.)*, No. 11-12404(KG), 2015 WL 5468786, at *4 (Bankr. D. Del. Sept. 15, 2015). The decision to transfer or not transfer venue is in the courts "sound discretion" and the decision must be analyzed on "an individualized, case-by-case consideration of convenience and fairness." *DHP Holdings II*, 435 B.R. at 269; *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). In the Third Circuit, bankruptcy courts have modified the analysis when considering a motion to transfer venue of an adversary proceeding. *Liberty State*, 2015 WL 5468786, at *4 (collecting cases). "The economics of the estate's administration must be incorporated into any venue transfer analysis . . . [t]he [Debtor's] need to minimize estate expenses and maximize creditor recovery will be taken into account within each factor that calls for an examination of public policy, economic effects on the parties or general practical considerations." *Id.* at *5. Furthermore, the defendant has a higher

burden in the context of transferring an adversary proceeding from the underlying bankruptcy case than it would otherwise have in the ordinary civil litigation context. *Id.* Thus, "[i]n order to defeat the presumption that venue is proper in this Court, the twelve *Jumara* factors must strongly favor the Defendant." *Id.*

*Enforceability of Forum Selection Clause*

As a preliminary matter, the Court finds it necessary to determine whether the forum selection clause found in the Contract is enforceable in this proceeding. Enforceability of a forum selection clause in the bankruptcy context depends on whether the proceeding can be characterized as core or non-core. *Kurz v. EMAK Worldwide, Inc.*, 464 B.R. 635, 641 (D. Del. 2011) (citing *In re Exide Techn.*, 544 F.3d 196, 206 (3d Cir. 2008)); *see also Penson Worldwide*, 587 B.R. at 14–22.

As the Court discussed above, the causes of action that Welded alleges against Transco are core matters vis-à-vis their nature as counterclaims against Transco's proofs of claim. 28 U.S.C. § 157(b)(2)(C). So, too, are Welded's objections to Transco's proofs of claim. 28 U.S.C. § 157(b)(2)(B). To the extent Williams Partners and Williams Co. are joined as co-defendants, and regarding the cause of action alleged only against Williams Partners and Williams Co. for tortious interference with contractual relationships, those actions are non-core, related to matters. 28 U.S.C. § 157(c)(1); *TTS, Inc. v. Stackfleth (Matter of Total Tech. Servs. Inc.)*, 142 B.R. 96, 99 (Bankr. D. Del. 1992) ("A proceeding is 'related' if 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'") (quoting *Pacor, Inc., v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). Thus, because the Court finds that Welded's claims against Transco are core matters, the forum selection clause found in the Contract between Welded and Transco is unenforceable in this proceeding as to Debtor's claims against Transco.

Moreover, Williams Co. and Williams Partners also cannot use the forum selection clause as a basis for venue transfer because they are not signatories to the Contract which contains the clause nor are they express intended beneficiaries. *Lowrimore v. Severn Trent Envtl. Servs., Inc.*, No. CIV-15-475-RAW, 2016 WL 799127, at *3–4 (E.D. Okla. Feb. 29, 2016). The Court will now examine each of the *Jumara* factors in turn.

*Factor 1 – Plaintiffs Choice of Forum*

The first factor pertinent to a venue transfer discussion is the plaintiff's choice of forum. Defendants, citing *DHP II*, argue that this factor favors venue transfer because the Contract at issue contains a forum selection clause naming Oklahoma as the proper forum. Motion at p. 12 (citing *DHP Holdings II*, 435 B.R. at 273). Debtor, citing *ONCO* and *Liberty State*, argue this factor weighs in favor of maintaining venue because a plaintiff's choice of forum is given substantial deference and there is a presumption that venue is proper in the forum where the bankruptcy petition is filed. Oppo. at p. 22 (first citing *Oglebay Norton Co. v. Port (In re ONCO Inv. Co.)*, 320 B.R. 577, 579 (Bankr. D. Del. 2005); and then citing *Liberty State*, 2015 WL 5468786, at *3). The Court agrees with Debtor.

Because we have already found the forum selection clause unenforceable in this proceeding as to all three Defendants, the presence of the clause is not determinative for this factor. Moreover, the underlying chapter 11 proceeding to which this adversary proceeding relates is pending here in Delaware. Accordingly, the Court finds that this factor favors maintaining venue in Delaware. *ONCO*, 320 B.R. at 589 ("[T]he plaintiff has chosen this forum, and courts generally defer to such decisions as long as they are legally proper.") (citing *Jumara*, 55 F.3d at 880); *Liberty State*, 2015 WL 5468786, at *5 ("[The] decision to file the Adversary Proceeding in this forum was the most logical choice in light of the underlying bankruptcy proceeding. As a result, the Court must respect the Trustee's desire to litigate the adversary proceeding in this forum.").

*Factor 2 – Defendants forum preference*

The second factor pertinent to a venue transfer discussion is the defendant's choice of forum. Defendants, citing *Hechinger*, concede that this factor is given less weight but argue that this factor favors venue transfer because the parties bargained for the forum selection clause naming Oklahoma in the contract. Motion at pp. 12–13 (citing *Hechinger*, 296 B.R. at 326). Debtor, citing *ONCO*, argues that this factor is given less weight. Oppo. at p. 22 (citing *ONCO*, 320 B.R. at 579). The Court agrees with both parties. Although this factor does favor venue transfer, it will be given less weight. *ONCO*, 320 B.R. at 580 (citing *Hechinger*, 296 B.R. at 326); *Kurz v. EMAK Worldwide, Inc.*, 464 B.R. at 648–49 ("The amount of weight given to a defendant's choice of forum waxes and wanes according to whether the remaining *Jumara* factors favor transfer.").

*Factor 3 – Whether the claim arose elsewhere*

The third factor pertinent to a venue transfer discussion is whether the claim arose elsewhere. Defendants, citing *DHP II*, argue that this factor is neutral because although the project is in Pennsylvania, there is no one central location of the claim. Motion at p. 13 (citing *DHP Holdings II*, 435 B.R. at 273). Debtor argues the factor is neutral because the competing claims arise from a construction project performed on real property in Pennsylvania. Oppo. at p. 22. The Court agrees with the parties that this factor is neutral and neither favors nor disfavors transferring venue.

*Factor 4 – Location of books and records and/or the possibility of viewing the premises if applicable*

The fourth factor pertinent to a venue transfer discussion is the location of books and records and/or the possibility of viewing the premises if applicable. Defendants argue this factor favors venue transfer because the books and records relating to the dispute are in Welded's offices in Ohio and in Transco's offices in Texas, Oklahoma, and Pennsylvania. Motion at p. 13. Debtor, citing *RCS Capital*, argues that this factor is neutral because although the records and documents associated with the proofs of claim are located in various locations, due to the availability of electronic discovery the information is easily transferable. Oppo. at p. 23 (citing *RCS Creditor Trust v. Schulte Roth & Zabel LLP (In re RCS Capital Corp.)*, No. 16-10223 (MFW), 2018 WL 2410178, at *3 (Bankr. D. Del. May 17, 2018)).

The Court agrees with Debtor that with electronic discovery the records and documents related to this action are easily transferable. *In re DHP Holdings II Corp.*, 435 B.R. 264, 273–74 (Bankr. D. Del. 2010) ("In this case the location of the books and records is not a significant factor due to the ease of transporting documents."); *RCS Capital Corp.*, 2018 WL 2410178, at *3. However, because this action concerns a pipeline in Pennsylvania, the location of the forum and its distance to the pipeline is also relevant. *See id.* ("The Defendant does not describe any . . . physical evidence that would make the Southern District of New York a better forum."). Because Delaware is indisputably closer to the pipeline than Oklahoma, this factor slightly favors maintaining venue.

*Factor 5 – The convenience of the parties as indicated by their relative physical and financial condition*

The fifth factor pertinent to a venue transfer discussion is the convenience of the parties as indicated by their relative physical and financial condition. Defendants argue that this factor favors venue transfer because the parties contracted for a forum selection clause naming Oklahoma as the proper forum, Welded is a Delaware entity headquartered in Ohio, and Defendants Transco, Williams Partners, and Williams Co. are Delaware entities with principal places of business in Oklahoma. Motion at p. 13.

Debtor, citing *Liberty State*, argues this factor weighs in favor of maintaining venue because Transco has already invoked the aid of the bankruptcy court, all entities involved are incorporated in Delaware, and transfer of the adversary proceeding will require Welded to incur substantial administrative expense, to the detriment of creditors' recoveries, to litigate duplicative issues in an Oklahoma forum. Oppo. at pp. 22–23 (citing *Liberty State*, 2015 WL 5468786, at *4–5). Expanding, Debtor argues that Welded would have to engage Oklahoma counsel and incur the travel, litigation, and other expenses that would be required to participate in an Oklahoma proceeding, in addition to incurring the costs to defend against the same claims in this Court in connection with the proofs of claim. *Id.* The Court agrees with Debtor.

As the Court has explained, "when analyzing the twelve factors, a bankruptcy court should always consider the interests of the estate and its creditors." *Liberty State*, 2015 WL 5468786, at *4. Transferring venue "may actually increase the administrative expenses of the estate, lower the amounts available for distribution . . . and sap the temporal and financial resources of the Plaintiff." *ONCO*, 320 B.R. at 580; *Liberty State*, 2015 WL 5468786, at *5. As a result, the Court finds that this factor favors maintaining venue.

*Factor 6 – The convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora*

The sixth factor pertinent to a venue transfer discussion is the convenience of the witnesses, but only to the extent that witnesses may be actually unavailable for trial in one of the fora. Defendants argue that this factor favors venue transfer because there is no indication that witnesses might not be available for trial in Oklahoma. Motion at p. 13. Debtor, citing *ONCO*, argues that this factor is neutral because this factor is limited to circumstances in which witnesses are actually unavailable for trial. Oppo. at p. 23 (citing *ONCO*, 320 B.R. at 580). Because it is unknown

whether witnesses will be available for trial due to a particular venue, it argues, this factor is neutral. *Id.* The Court agrees with Debtor. Neither party has demonstrated that there are potential witnesses that will not be available for trial in either Delaware or Oklahoma. Accordingly, the Court finds that this factor is neutral and neither favors nor disfavors transferring venue. *DHP Holdings II*, 435 B.R. at 274.

## Factor 7 – The enforceability of the judgment

The seventh factor pertinent to a venue transfer discussion is the enforceability of the judgment. Defendants, citing *DHP II*, argue that this factor is neutral because there is no reason to believe a judgment in either jurisdiction would not be given full faith and credit. Motion at p. 14 (citing *DHP Holdings II*, 435 B.R. at 274). Debtor also argues that this factor is neutral because both the Court's and an Oklahoma court's judgment would be equally enforceable. Oppo. at p. 24. The Court agrees with both parties. Because there is no reason to believe a judgment in either jurisdiction would not be given full faith and credit, this factor is neutral and neither favors nor disfavors transferring venue. *DHP Holdings II*, 435 B.R. at 274.

## Factor 8 – Practical considerations that would make the trial easy, expeditious, or inexpensive

The eighth factor pertinent to a venue transfer discussion is the practical considerations that would make the trial easy, expeditious, or inexpensive. Defendants argue that this factor favors venue transfer because the breach of contract action has already been commenced in Oklahoma pursuant to the forum selection clause and the State Court is better equipped to apply Oklahoma state law. Motion at p. 14. The Debtor argues that this factor weighs heavily in favor of maintaining venue because: (i) the issues raised in the adversary proceeding are identical to those that will be resolved as part of the proofs of claim; (ii) the Court is already familiar with the parties and the context of the adversary proceeding, which will allow the proceeding to move forward in an expeditious manner; and (iii) any proceeding in another court on the same issues will be duplicative and have adverse economic implications for Welded's estate and its creditors. Oppo. at p. 24. The Court agrees with Debtor.

The key question on this factor is "whether it is actually easier, faster or less expensive to litigate this adversary in another forum." *ONCO*, 320 B.R. at 581. The Court finds that this factor strongly favors maintaining venue. The Court is familiar with the details of both the adversary proceeding and the bankruptcy case. Moreover, the interests of the estate and creditors are better

served by maintaining venue in the same court in which the underlying bankruptcy proceeding is pending. Thus, the Court finds that this factor strongly favors maintaining venue. *Id.; Kurz v. Emak Worldwide, Inc.*, 464 B.R at 649; *Liberty State,* 2015 WL 5468786, at *6; *RCS Capital Corp.*, 2018 WL 2410178, at *5.

*Factor 9 – The relative administrative difficulty in the two fora resulting from congestion of the courts' dockets*

The ninth factor pertinent to a venue transfer discussion is the relative administrative difficulty in the two fora resulting from congestion of the courts' dockets. Defendants argue that this factor favors venue transfer because the proceeding is already pending in Oklahoma and the State Court is better equipped to address a breach of contract claim under Oklahoma state law. Motion at p. 14. Debtor argues that this factor is neutral because there has been no indication of court congestion in either forum, the Court has jurisdiction over all parties, and the Court routinely addresses state law issues. Oppo. at p. 25.

The Court finds that this factor favors maintaining venue. As other courts in this district have noted, "[R]emoval of a single adversary proceeding will not alleviate this Court's heavy caseload." *DHP Holdings II*, 435 B.R. at 275 (citing *ONCO*, 320 B.R. at 581). Moreover, and more importantly, "it is more economical to proceed with the current adversary proceeding in the forum where the main bankruptcy case was filed." *ONCO*, 320 B.R. at 581. Thus, this factor favors maintaining venue.

*Factor 10 – The public policies of the fora*

The tenth factor pertinent to a venue transfer discussion is the public policies of the fora. Defendants argue this factor favors venue transfer because "the basis for the Complaint is a non-core breach of contract claim" and the public policy of centralizing bankruptcy matters "is not greatly frustrated by the transfer of non-core proceedings." Motion at p. 14. Debtor argues this factor weighs in favor of maintaining venue because the resolutions of the proofs of claim and this adversary proceeding have implications on the recoveries of each creditor in the chapter 11 cases, there is a strong public interest in resolving core bankruptcy matters in the bankruptcy court, and the adversary proceeding should remain with this Court to be resolved as part of the chapter 11 case proceedings. Oppo. at pp. 25–26. The Court agrees with Debtor.

As the Court has noted, the breach of contract claim, along with the other claims brought against Transco, is a core matter due to its nature as a counterclaim to Transco's proofs of claim. And as both parties point out, there is a "strong public policy favoring centralization of bankruptcy matters." *Kurtz v. EMAK Worldwide, Inc.*, 464 B.R. at 650; *DHP Holdings II*, 435 B.R. at 275. Because keeping the adversary proceeding in the Court would "best comport with the Code's policy of protecting creditors' interests by maximizing the value of the bankruptcy estate," the Court finds that this factor strongly favors maintaining venue. *Liberty State*, 2015 WL 5468786, at *7.

*Factor 11 – The familiarity of the judge with the applicable state law*

The eleventh factor pertinent to a venue transfer discussion is the familiarity of the judge with the applicable state law. Defendants, citing *DHP II*, argue that this factor favors venue transfer because while the Court regularly decides issues of state law, an Oklahoma state court has more familiarity with Oklahoma state law. Motion at p. 15 (citing *DHP Holdings* II, 435 B.R. at 275). Debtor argues that this factor is neutral because federal courts regularly apply the laws of other states, the state law questions are neither complex nor novel, and the Court will have no difficulty applying the laws of Oklahoma. Oppo. at p. 26. The Court agrees with Defendants. Although the Court routinely applies state law, a judge sitting in Oklahoma might be more familiar with issues arising under Oklahoma law. *DHP Holdings II*, 435 B.R. at 275–76; *Liberty State*, 2015 WL 5468786, at *7. Thus, this factor favors transferring venue.

*Factor 12 – The local interest in deciding local controversies at home*

The twelfth factor pertinent to a venue transfer discussion is the local interest in deciding local controversies at home. Defendants, citing *DHP II*, argue this factor favors venue transfer because an Oklahoma state court has a greater interest in deciding issues of Oklahoma state law. Motion at p. 15 (citing *DHP Holdings II*, 435 B.R. at 276). Debtor argues that this factor is neutral because the controversy involves a construction project on real property located in Pennsylvania. Oppo. at p. 25.

The Court acknowledges that Oklahoma court's have an interest in deciding issues which arise and are governed under Oklahoma law. *See DHP Holdings II*, 435 B.R. at 276. However, the policy of centralizing bankruptcy proceedings and protecting the interests of creditors and the estate overwhelm. As the Court has previously noted, "[T]his Court cannot ignore the local interest

in resolving this matter in the forum where the Debtors' estate administration is currently taking place." *Liberty State*, 2015 WL 5468786, at *7. Thus, the Court finds that this factor favors maintaining venue.

After a close examination of all factors, the Court finds that it would be inappropriate to transfer venue of this adversary proceeding. As previously noted, because this is a motion to transfer venue of an adversary proceeding, the movant has a higher burden and the *Jumara* factors must strongly favor the movant. The Court finds that Defendants have failed to meet that burden. The issues presented in the adversary proceeding will necessarily have to be resolved as part of the claims resolution process and will ultimately have an impact on the Debtor's estate and its creditors. Policies favoring centralization of bankruptcy matters along with judicial efficiency overwhelm in this circumstance. Accordingly, and for the foregoing reasons, the Court denies Defendant's Motion to Transfer Venue.

## III. Motion to Dismiss

In its three-part Motion, Defendants move to dismiss Counts II, IV, V, VI, and VII for failure to state a claim upon which relief can be granted.

Federal Rule of Civil Procedure 12(b)(6), made applicable to this proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure, requires the Plaintiff to state a plausible claim for relief. Fed. R. Civ. Pro. 12(b)(6); Fed. R. Bankr. P. 7012. In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Evaluating a complaint under this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In the Third Circuit, the analysis is a two-step process: the court must look first at the factual allegations, as separate from the legal conclusions drawn by the plaintiff, and then determine whether those facts, which must be taken as true, are sufficient to state a "plausible claim for relief." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210–11 (3d Cir. 2009). Lastly, the court must "construe the [c]omplaint in the light most favorable to [the plaintiff], and

determine whether, under any reasonable reading of the [c]omplaint, [the plaintiff] is entitled to relief." *Rea v. Federated Investors,* 627 F.3d 937, 940 (3d Cir. 2010).

### a. Count IV – Turnover – 542

In its Motion to Dismiss, the Defendants move to have Count IV dismissed for failure to state a claim upon which relief can be granted. Count IV seeks recovery from all three Defendants under a turnover theory.

Section 542 of the Bankruptcy Code provides that "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a). To establish a turnover claim, the party seeking turnover has the burden of showing "(1) the property is in the possession, custody or control of another entity; (2) the property can be used in accordance with the provisions of [S]ection 363; and (3) the property has more than inconsequential value to the debtor's estate." *Zazzali v. Minert (In re DBSI),* 468 B.R. 663, 669 (Bankr. D. Del. 2011) (quoting *Newman v. Tyberg (In re Steel Wheels Transport, LLC),* 2011 WL 5900958, at *5 (Bankr. D. N.J. Oct. 28, 2011)).

However, a properly pled complaint asserting a claim for turnover must allege an undisputed right to recover the claimed debt. *American Home Mortg. Corp. v. Showcase of Agents, LLC (In re Am. Home Mortg. Holding),* 458 B.R. 161, 169 (Bankr. D. Del. 2011). An action for turnover is not appropriate where there is a legitimate dispute about the ownership of property the movant seeks to recover. *Giuliano v. Fairfield Grp. Health Care Centers Ltd. P'ship (In re Lexington Healthcare Grp., Inc.),* 363 B.R. 713, 716 (Bankr. D. Del. 2007); *Hechinger Inv. Co. of Delaware, Inc. v. Allfirst Bank (In re Hechinger Inv. Co. of Delaware Inc.),* 282 B.R. 149, 161–62 (Bankr. D. Del. 2002). In the Third Circuit, a bona fide dispute exists "[i]f there is a genuine issue of a material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts." *B.D.W. Assoc's Inc. v. Busy Beaver Bldg. Centers, Inc.,* 865 F.2d 65, 66 (3d Cir. 1989). "Under [the analysis for deciding whether there is a bona fide dispute], the bankruptcy court must determine whether there is an objective basis for either a factual or a legal dispute as to

the validity of the debt." *Lexington Healthcare*, 363 B.R. at 716 (quoting *In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987)).

The Debtor has alleged Defendants possess, have custody of, or control the Withheld Funds. Compl. ¶ 288. Debtor further alleges that those funds constitute property of Debtor's estate under section 541 that the Debtor may use or sell under section 363 of the Bankruptcy Code. Compl. ¶¶ 289–90. In response, the Defendants argue that the ownership of the funds in question is the subject of a bona fide dispute, and thus the action for turnover is premature Motion at pp. 18–22. The Court agrees with the Defendants.

At its core, this dispute is a breach of contract action. This is evident when looking at the Complaint. In particular, the Debtor's breach of contract claim in Count I alleges that Defendants breached the Contract by failing to reimburse or improperly withholding the Withheld Funds. Compl. ¶ 265. Furthermore, the Complaint is riddled with facts indicating that Defendants truly believe the Contract entitles Defendants to the Withheld Funds. At the end of the day, both parties take the position that the Contract entitles them to the Withheld Funds. To conclude there is not a bona fide dispute as to the ownership of the funds in question and validity of the debt would be to summarily resolve the breach of contract dispute on the merits. Because the breach of contract claim is one that is made in Count I of the Complaint, and thus is one which the Court will have to decide on the merits in the course of this litigation, the Court declines to make that determination at this early stage in the litigation. As a result, because the ownership of the funds in question is subject to a bona fide dispute, the action for turnover is simply premature and thus is dismissed. *Hechinger*, 282 B.R. at 162 ("The fact that Count I seeks to recover the Drawn Funds pursuant to a claim for breach of contract and improper Draw on the Acceptable Substitute LC supports this conclusion."); *Lexington Healthcare*, 363 B.R. at 717 ("Because a dispute exists about whether the security deposit is property of the estate, this Court concludes that the Trustee cannot state a claim for turnover."); *Miller v. Greenwich Capital Fin. Prods., Inc.* (*In re Am. Bus. Fin. Servs., Inc.*), 361 B.R. 747, 761 (Bankr. D. Del. 2007); *IPC Int'l Corp. v. Milwaukee Golf Shopping Ctr.* (*In re IPC Int'l Corp.*), No. 13-12050, 2014 WL 5544692, at *3 (Bankr. D. Del. Nov. 3, 2014).

### b. Count V - Automatic Stay – 362(a)(3)

In its Motion to Dismiss, the Defendants move to have Count V dismissed for failure to state a claim upon which relief can be granted. Count V seeks a declaratory judgment against all three Defendants for a violation of section 362(a)(3) the automatic stay.

Section 362(a)(3) of the Bankruptcy Code provides that "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" constitutes a violation of the automatic stay. "A violation of [Section] 362(a)(3)...requires both (1) a post-petition act; and (2) property of the estate." *Pardo v. Nylcare Health Plans, Inc. (In re APF Co.)*, 274 B.R. 408, 416 (Bankr. D. Del. 2001). To violate the automatic stay, a post-petition act must be affirmative rather than merely passive. *Id.* The Plaintiff "must show that [Defendants] engaged in conduct which was an affirmative post-petition act manifesting either an exercise of control over property of the estate, or collecting, assessing or recovering such property in order to demonstrate a stay violation." *Id.* at 417. Should a violation occur, Section 362(k)(1) subjects violators to liability for "actual damages, including costs and attorneys' fees, and, in appropriate circumstances ... punitive damages." 11 U.S.C. 362(k)(1).

Defendants, citing *In re AFP*, argue that Count V should be dismissed because Debtor failed to allege that Defendants took an affirmative post-petition act. Motion at pp. 22–24 (citing *In re AFP Co.*, 274 B.R. at 416–17). Because a violation of the automatic stay requires affirmative action, it argues, Defendant's failure to remit payment of the disputed Withheld Funds to Debtor is not sufficient for an automatic stay violation finding. *Id.* at p. 23.

In its Complaint, Debtor argues that Williams possesses, has custody of, or controls the Withheld Funds, the Withheld Funds constitute property of the estate, and Williams has refused to turn over the Withheld Funds to Debtor. Compl. ¶¶ 294–97. Thus, it concludes, Debtor is entitled to a declaration that Williams has violated the automatic stay of section 362(a)(3) by obtaining and maintaining possession of and control over property of the estate and refusing to remit the Withheld Funds to Debtor. Compl. ¶ 298. The Court agrees with the Defendants.

The Court finds *In re AFP* instructive. In that case, the plaintiffs argued that the withholding of and failure to remit payment allegedly owed to the Debtor under a contract violated the automatic stay. *In re APF Co.*, 274 B.R. at 411. The court found no violation of the automatic stay and dismissed the cause of action. First, the court reasoned that the payments in question

became due pre-petition, and thus the failure to remit payment was not an act that could be said to take place post-petition. *Id.* at 416. Second, the court reasoned that the failure to remit payment was not an affirmative act within the meaning of section 362(a)(3), which requires "more than a mere passive act of failing to remit the Withheld Payments." *Id.* at 417. Because the court concluded there was no violation of the automatic stay, the court dismissed the plaintiff's cause of action. *Id.* at 417–18.

Like in *AFP*, here Transco withheld or failed to remit payments allegedly owed to the Debtor under the Contract. However, unlike in *AFP* where all the payments in question became due under the Contract pre-petition, two of the payments in question here, the Additional Withholdings, arguably became due under the Contract post-petition. Despite this difference, the Court still believes *AFP* to be dispositive. Transco's failure to remit payment to Debtor upon receipt of the September and October True-Up Invoices cannot be characterized as an affirmative act. Failure to pay a disputed contract debt is merely a passive act that, even if taken post-petition, does not satisfy the affirmative act requirement necessary for an automatic stay violation finding under Section 362(a)(3). *In re AFP Co.*, 274 B.R. at 417–18 (Bankr. D. Del. 2001); *Pardo v. Horizon Healthcare Plan Holding Co., Inc (In re APF Co.)*, No. 00-854 (PJW), 2001 WL 1820788, at *5 (D. Del. Aug. 31, 2001) ("[T]he mere breach of a contract itself is not a violation of the stay."). Thus, Count V will be dismissed.

### c. Count VI - Impermissible Setoff – 362(a)(7)

In its Motion to Dismiss, the Defendants move to have the Court dismiss Count VI for failure to state a claim upon which relief can be granted. Count VI seeks a declaratory judgment against all three Defendants for an impermissible setoff in violation of the automatic stay.

Section 362(a)(7) of the Bankruptcy Code automatically stays and prohibits "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. 362(a)(7). "The question of whether a setoff under § 362(a)(7) has occurred is a matter of federal law" that requires "an intent permanently to settle accounts." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 19 (1995). The Supreme Court characterized the right to setoff as "the right which one party has against another to use his claim in full or partial satisfaction of what he owes to the other. That right is constantly exercised by business men in making book entries whereby one mutual debt is applied against another." *Studley*

*v. Boylston Bank,* 229 U.S. 523, 528 (1913). Regarding the *Boylston Bank* opinion and setoffs, the Sixth Circuit remarked, "Language indicating that a setoff is accomplished by some affirmative act which provides record evidence of the transaction is used throughout the Boylston Bank opinion." *Baker v. Nat'l City Bank of Cleveland,* 511 F.2d 1016, 1017 (6th Cir. 1975). Thus, the question for the Court is whether the Complaint sufficiently pleads facts which state a plausible claim that Defendants effectuated a setoff in violation of the automatic stay pursuant to 362(a)(7). The Court concludes that it does.

Defendants argue that Count VI should be dismissed because the Complaint does not allege that Defendants actually effectuated a setoff and because Count VI is not ripe. Motion at pp. 25–26. In the Complaint, Debtor argues Williams has custody of or controls the Withheld Funds, that the Withheld Funds constitute property of the estate, and that Williams has refused to turn over the Withheld Funds to Welded and has not sought relief from the automatic stay. Compl. ¶¶ 303–06. Debtor further argues "if and to the extent that Williams performed a postpetition offset of any amounts that Welded allegedly owes to Transco under the Contract against the amounts Transco owes to Welded, Williams effectuated an impermissible setoff in violation of the automatic stay." Compl. ¶ 307.

The Court concludes that the Motion to Dismiss Count VI should be denied. At this stage of the proceedings, Debtor is only required to provide allegations that are not conclusory or a recitation of the elements. *Twombly,* 550 U.S. at 555. Furthermore, when ruling on a motion to dismiss, "courts have an obligation in matters before them to view the complaint as a whole and to base rulings not upon the presence of mere words, but, rather, upon the presence of a factual situation which is or is not justiciable." *City of Pittsburgh v. West Penn Power Co.,* 147 F.3d 256, 263 (3d Cir. 1998). In the Complaint, the Debtor alleges that the Initial Withholdings became due and were subsequently withheld pre-petition and that the Additional Withholdings became due and were subsequently withheld post-petition. Compl. ¶¶ 22–28. Furthermore, the Complaint states that Defendant Transco has filed two proofs of claim in the Debtor's bankruptcy case totaling over $110 million. Compl. ¶¶ 188–89, 194. Taking the allegations as true and drawing all reasonable inferences in favor of the Debtor, the Complaint states a plausible claim that Defendants effectuated a setoff in violation of the automatic stay pursuant to section 362(a)(7). While Defendants deny that a setoff took place, it is reasonable to infer that Defendant's withholding of

and failure to remit the Withheld Funds was effectuated to setoff the amounts against the claims Transco has filed against Debtor in the bankruptcy. Thus, the Court will deny Defendants' Motion to Dismiss as to Count VI.

### d. Count II – Breach of the implied covenant of good faith and fair dealing

In its Motion to Dismiss, the Defendants move to have Count II dismissed for failure to state a claim upon which relief can be granted. Count II seeks recovery from Defendant Transco under the theory of breach of implied covenant of good faith and fair dealing.

*Choice of Law*

Before addressing the sufficiency of Debtor's Complaint, the Court must determine which state's law applies to the asserted claims. To this end, the Court first must ascertain whether federal or Delaware law provides the choice of law rules. The Court will follow the rule observed by federal courts in diversity cases and apply the choice of law rules of the state in which the court sits. *See, e.g., In re Eagle Enters., Inc.*, 223 B.R. 290, 292 (Bankr. E.D. Pa. 1998) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co .*, 313 U.S. 487, 496 (1941)), *aff'd*, No. Civ. A. 98–4749 (E.D. Pa. 1999). Accordingly, the Court will use Delaware's choice of law provisions to determine which state's law governs Welded's claims.

Present in the Contract is a choice of law provision which states, "The laws of the State of Oklahoma, excluding its choice of law principles, shall govern this Contract." (Compl. Ex. 2, Art. 35). Delaware courts "are bound to respect the chosen law of contracting parties, so long as that law has a material relationship to the transaction." *Alamo Grp., LLC v. A & G Realty Partners, LLC (In re OSC 1 Liquidating Corp.)*, 529 B.R. 825, 831 (Bankr. D. Del. 2015) (quoting *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1046 (Del. Ch. 2006)). Because all three Defendants have their principal place of business in Oklahoma, the required material relationship is present. *Brown v. SAP Am., Inc.*, No. C.A. 98-507-SLR, 1999 WL 803888, at *4 (D. Del. Sept. 13, 1999). Thus, the Court will apply Oklahoma law in reviewing whether Count II sufficiently states a claim.

*Count II*

In its Complaint, Debtor alleges that Transco breached the implied covenant of good faith and fair dealing by purposely waiting until Debtor had performed all work necessary to achieve

mechanical completion of the Atlantic Sunrise project, thereby enabling Transco to obtain final FERC approval, before it abruptly notified Debtor that Williams was withholding reimbursement of approximately $24 million that Debtor had paid to construct Williams's pipeline over the previous 10 months. Compl. ¶ 273.

In its Motion to Dismiss, Defendants argue that Count II should be dismissed. First, they argue to the extent Count II asserts a claim for breach of contract in the form of breach of the implied covenant of good faith and fair dealing, it is superfluous and is not properly asserted as an independent claim. Motion at p. 18. Second, they argue that to the extent Count II asserts a tortious breach of the implied covenant of good faith and fair dealing, it fails to state a claim because there are no allegations of a special relationship between the parties sufficient to give rise to independent tort liability. *Id.* The Court agrees with Defendants.

Under Oklahoma law, every contract contains an implied covenant of good faith and fair dealing. *Wathor v. Mutual Assur. Adm'rs. Inc.*, 87 P.3d 559, 561 (Okla. 2004). However, "in ordinary commercial contracts, a breach of that duty merely results in damages for breach of contract, not independent tort liability." *Id.* To recover under the implied covenant of good faith and fair dealing as a tort action independent from a breach of contract action, a special relationship must exist between the contracting parties. *McGregor v. Nat'l Steak Processors, Inc.*, No. 11-CV-0570-CVE-TLW, 2012 WL 314059, at *4–5 (N.D. Okla. Feb. 1, 2012). "A 'special relationship' that gives rise to tort liability for bad faith exists only in limited circumstances and is 'marked by (1) a disparity in bargaining power where the weaker party has no choice of terms, also called an adhesion contract, and (2) the elimination of risk.'" *Warrenfeltz v. Hogan Assessment Sys., Inc.*, No. 17-CV-428-GKF-FHM, 2018 WL 1546559, at *2 (N.D. Okla. Mar. 29, 2018) (citing *Embry v. Innovative Aftermarket Sys. L.P.*, 247 P.3d 1158, 1160 (Okla. 2010)); *see also Lewis v. Atena U.S. Healthcare, Inc.*, 78 F. Supp. 2d 1202, 1208 (N.D. Okla. 1999) ("[T]he tort has never been extended beyond the insurance area.").

In its Complaint, Debtor pleads no facts which would suggest the type of special relationship between the contracting parties necessary to support an independent tortious action for breach of the implied covenant of good faith and fair dealing. Thus, to the extent Debtor is attempting to state a tort claim for breach of the implied covenant of good faith and fair dealing, Debtor fails to state a claim under Oklahoma law for which relief can be granted. *Block v. Pre-*

*Paid Legal Servs., Inc.*, No. CIV-07-1304-F, 2008 WL 723775, at *2–3 (W.D. Okla. Mar. 14, 2008). However, to the extent Debtor is attempting to state a breach of the implied covenant of good faith and fair dealing claim as part of Debtor's breach of contract action, the claim is subsumed by the breach of contract claim. *Id.* Thus, Count II is dismissed with the claim subsumed in the breach of contract action.

### e. Count VII - Unjust Enrichment

In its Motion to Dismiss, the Defendants move to have Count VII dismissed for failure to state a claim upon which relief can be granted. Count VII seeks recovery from all three Defendants under an unjust enrichment theory.

In its Complaint, the Debtor alleges that Williams has wrongfully retained possession, custody, or control of the Withheld Funds despite the facts that: (i) Debtor provided the services it was contractually obligated to perform under the Contract; (ii) the Project has been completed; (iii) the pipeline is fully operational and is being operated by Williams as part of its business operations; (iv) Williams is receiving and will continue to receive substantial income from the operation of the pipeline; and (v) Debtor has no outstanding service obligations to Williams in connection with the Contract or any other agreement. Compl. ¶ 312. Furthermore, Welded alleges that it has suffered a substantial detriment as a result of Williams's retention of the Withheld Funds because (i) it has already performed the services required under the Contract; (ii) it has already paid third parties the amounts for which it seeks reimbursement from Transco under the Contract; and (iii) the Withheld Funds have not been available for Debtor's use or distribution to creditors of the Debtors' estates. Compl. ¶ 313.

In its Motion to Dismiss, the Defendants make two arguments as to why Count VII should be dismissed. First, as to Defendant Transco, Defendants argue that because a valid and enforceable contract covering the services for which Debtor seeks payment exists between Debtor and Transco, Debtor cannot assert a valid claim for unjust enrichment against Transco. Motion at p. 27–28. Second, as to Williams Co. and Williams Partners, Defendants argue that Debtor cannot assert a valid claim for unjust enrichment because neither entity directly received a benefit from Debtor. Motion at p. 29–30.

*Choice of law*

As noted previously, a court sitting in Delaware must apply Delaware choice of law principles. *NHB Assignments LLC v. General Atlantic LLC* (*In re PMTS Liquidating Corp.*), 452 B.R. 498, 510 (Bankr. D. Del. 2011) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941)). "Delaware's choice of law rules require that an actual conflict exist prior to engaging in a complete conflict of law analysis." *Id.* The Court finds that under both Oklahoma and Pennsylvania law, Debtor's unjust enrichment claim against Williams Partners and Williams Co. will be dismissed but Debtor's unjust enrichment claim against Transco will not. Because the Court finds that there is no actual conflict between Oklahoma and Pennsylvania law on these issues, the Court finds it unnecessary to perform a detailed choice of law analysis and make a determination, at this stage, as to whether Oklahoma or Pennsylvania law will govern the remaining unjust enrichment claim moving forward.

*Welded v Transco*

Under Oklahoma law, "[u]njust enrichment is a condition which results from the failure of a party to make restitution in circumstances where not to do so is inequitable, *i.e.*, the party has money in its hands that, in equity and good conscience, it should not be allowed to retain." *Okla. Dep't of Secs. ex rel. Faught v. Blair*, 231 P.3d 645, 658 (Okla. 2010). Moreover, in Oklahoma "a party may only recover under this theory by showing 'enrichment to another coupled with a resulting injustice.'" *Cty. Line Inv. Co. v. Tinney*, 933 F.2d 1508, 1518 (10th Cir. 1991) (quoting *Teel v. Public Serv. Co.*, 767 P.2d 391, 398 (Okla. 1985)).

Under Pennsylvania law, a plaintiff must prove "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Mitchell v. Moore,* 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999). The question is not the intent of the parties, but rather "whether the defendant has been unjustly enriched." *Id.*

The parties dispute whether Debtor may plead unjust enrichment concurrently with a breach of contract claim. The Court acknowledges that there are conflicting opinions as to whether Oklahoma law permits such alternative pleading. *See Brown v. Kruger Family Holdings II, LLC*, No. 19-CV-00048-GKF-JFJ, 2019 WL 4061677, at *5 (N.D. Okla. Aug. 28, 2019)

(acknowledging and discussing the conflicting opinions); *Am. Biomedical Grp., Inc. v. Techtrol, Inc.*, 374 P.3d 820, 828 (Okla. 2016) ("[A] party is not entitled to pursue a claim for unjust enrichment when it has an adequate remedy at law for breach of contract."). So, too, are there conflicting opinions on the issue in Pennsylvania. *See In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 444–45 (S.D.N.Y. 2017), *modified on reconsideration*, No. 14-MC-2543 (JMF), 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017) (collecting cases).

After an examination of the caselaw, the Court agrees with the Debtor. Although the Debtor may not recover under both breach of contract and unjust enrichment theories so as to prevent double recovery, the weight of authority in both Pennsylvania and Oklahoma seem to hold that a plaintiff may plead both breach of contract and unjust enrichment claims in the alternative. *Baker Hughes Oilfield Operations, LLC v. Iron Hawk Energy Grp. Joint Venture*, No. 17-CV-00652-GKF-JFJ, 2018 WL 3298072, at *3 (N.D. Okla. June 13, 2018) (collecting cases saying same); *Hurt v. Vanderbilt Mortg. & Fin., Inc.*, No. CIV-18-1150-SLP, 2019 WL 3069437, at *7 (W.D. Okla. July 12, 2019); *Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 970 (Pa. Super. Ct. 2009); *Alpha Pro Tech, Inc. v. VWR Int'l LLC*, 984 F. Supp. 2d 425, 445–46 (E.D. Pa. 2013). Furthermore, the Court finds that Debtor has plead facts which, if taken as true along with all reasonable inferences, plausibly state a claim for unjust enrichment under both Oklahoma and Pennsylvania law. Thus, the Court will not dismiss Count VII as to Defendant Transco.

### *Welded v Williams Partners and Williams Co.*

As to Debtor's unjust enrichment claim against Williams Co. and Williams Partners, the Court finds that the Debtor fails to state a claim upon which relief can be granted under either Oklahoma or Pennsylvania law and will dismiss the claims as a result.

As the Defendants point out, the Debtor's theory for unjust enrichment is essentially that it was not paid for services it provided under the Contract and the Defendants are now receiving a benefit in the form of income from the pipeline. However, the Complaint fails to allege that Debtor conferred a direct benefit to Williams Partners or Williams Co. as opposed to Transco. The Complaint does not allege that Debtor provided any services to Williams Partners or Williams Co. as opposed to Transco, that Williams Partners or Williams Co. were obligated to pay Debtor or that Debtor expected such entities to do so, or even that Williams Co. or Williams Partners are the owners of the pipeline which allegedly is currently generating substantial income.

Any benefit conferred on Williams Partners or Williams Co. as a result of Welded's services are purely incidental to Welded's contractual relationship with Transco, and any unjust enrichment theory arising out of such relationship is better brought against Transco—the entity which Welded directly conferred benefits upon—rather than Williams Partners or Williams Co. *See Slover v. Equitable Variable Life Ins. Co.*, 443 F. Supp. 2d 1272, 1280 (N.D. Okla. 2006) ("[T]he non-diverse Defendants . . . clearly did not obtain any direct benefit. Thus, Plaintiffs' claim for unjust enrichment against the non-diverse Defendants must fail as a matter of law."); *Samuels v. Hendricks,* 445 A.2d 1273, 1276 (Pa. Super. Ct. 1982) ("[T]he mere fact that Mrs. Hendricks may have indirectly benefitted from appellant's performance is not sufficient to impose upon her a duty to make restitution."); *Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 721–22 (E.D. Pa. 2013) ("Here, the relevant Plaintiffs plead no facts establishing that [they] ever conferred a direct benefit on Defendants as is required to support an unjust enrichment claim under the law of each of their respective states."); *First. Fed. Sav. & Loan Ass'n of Pittston v. Reedy*, 35 P.A. D & C 2d 299, 304–05 (Pa. Com. Pl. 1964) ("[Plaintiff] cannot shift the loss resulting from its error in judgment to one who may have been indirectly benefited by the performance of these services (citing *Restatement (First) of Restitution § 110)*); *cf. QVC, Inc. v. OurHouseWorks, LLC*, 649 F. App'x 223, 228 (3d Cir. 2016) ("In this case, permitting a party that has contracted with a subsidiary to recover damages from a corporate parent on an unjust enrichment theory would allow plaintiffs to evade Illinois corporate liability limitations."). Thus, the Court finds that Debtor fails to state a claim for unjust enrichment as to Williams Partners and Williams Co. under both Oklahoma and Pennsylvania law, and Count VII is dismissed in part to that extent.

## Conclusion

For the foregoing reasons, the Court finds with respect to the Motions as follows:

Motion to Abstain DENIED as to all allegations against all Defendants;

Motion to Transfer Venue DENIED as to allegations against all Defendants; and

Motion to Dismiss GRANTED as to Count II against Transco, GRANTED as to Count IV against all Defendants, GRANTED as to Count V against all Defendants, DENIED as to Count VI against all Defendants, DENIED as to Count VII against Transco, and GRANTED as to Count VII against Williams Partners and Williams Co.

The Court will issue an order giving effect to its ruling.

Dated: October **16**, 2019
       Wilmington, Delaware

KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE