IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WELDED CONSTRUCTION, L.P., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 18-12378 (LSS)<br><br>(Jointly Administered) |
| WELDED CONSTRUCTION, L.P.,<br><br>Plaintiff,<br><br>v.<br><br>THE WILLIAMS COMPANIES, INC., WILLIAMS PARTNERS OPERATING LLC, and TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC,<br><br>Defendants. | Adv. Pro. No. 19-50194 (LSS)<br><br>**Re: Docket Item 308** |

**BENCH RULING ON WELDED CONSTRUCTION L.P.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
REGARDING CONTRACT INTERPRETATION AND CONTRIBUTION CLAIM[1]**

    This is an oral ruling on Welded's motion for partial summary judgment on three issues of contract interpretation arising out of its contract dispute with Transco. As the parties know, I held argument on July 26 and took the matter under advisement. I thank counsel for coming together quickly and providing excellent argument. As I stated at the conclusion of argument, time prevents me from writing. But, I will also place this Bench ruling on the docket.

    Because I am ruling for the parties who are familiar with the Contract and the disputes, I am not providing background. Any necessary general background can be found in my ruling on Transco's motion for partial summary judgment, which was issued last Friday.

---

[1] This Bench Ruling was read in court on August 4, 2023.

**Issue 1:**     **Equipment Fee for "travel pay" and "per diem"**

Welded moves for a determination on summary judgment that travel pay and per diem are included in the calculation of Equipment Fee. Welded relies primarily on the definition of Labor Costs (and in particular (iii)) as well as the Exhibits to Section VIII of the Contract.

Transco concedes that travel pay and per diem are reimbursable under the Contract, but argues that they are expressly excluded from the category of Labor Costs used to calculate the Equipment Fee. Transco characterizes travel pay and per diem as *expenses* reimbursable under Section VIII Article 2 F and G of the Contract. As expenses, Transco argues, travel pay and per diem are not compensation for actual Work performed or wages and benefits payable under Section VIII Article 2 D of the Contract and so are not used in the calculation of Equipment Fee. Transco argues that to give meaning to every provision of the contract, I must exclude travel pay and per diem as Transco contends.

Both parties assert that the Contract is unambiguous.

**Conclusion 1**

The Contract provides the answer. Section VIII, titled Compensation, governs. In terms of the architecture of this Section of the Contract, Section VIII has six articles, two of which are relevant here.

Article 1 provides that Transco agrees to compensate Welded (and Welded agrees to accept) remuneration paid on an actual cost-basis in accordance with the components and methods of payment in Article 2.

Article 2, after defining relevant terms, provides how each element of the Work will be paid for, including labor, supervision, management and planning, equipment, materials, supplies, consumables and services. As relevant here, Paragraph D addresses compensation for work by NPLA Personnel and Field Personnel and specifically refers to payment for wages and benefits as set forth in the union agreements listed on Exhibit 3 and the Rates and Benefits for Field Personnel listed on Exhibit 1. Paragraphs F and G cover living and travel expenses for all types of personnel as well as other expenses, such as for vehicle rental and airfare, which are reimbursable by Transco to Welded.

The relevant definitions here are Equipment Fee and Labor Costs.

Equipment Fee is defined as "a flat fee calculated as 50% of Labor Costs payable for actual Work performed by all NPLA Personnel and Field Personnel assigned to the Project."

Labor Costs is defined as "i) the actual wage rates and benefits paid to NPLA Personnel pursuant to the NPLA for actual Work performed, ii) the actual wages and benefits, in accordance with Exhibit I paid to Field Personnel for actual Work performed and iii) for both i and ii above, to the extent however not already

2

addressed by or covered under the NPLA with respect to NPLA Personnel, fringe benefits, employee vehicle rental/pay, travel pay, per diem, fuel pay, payroll taxes and insurance in accordance with Exhibit I actually paid to NPLA and Field Personnel in connection with payment for actual Work."[2]

I conclude that the definitions are unambiguous and that both per diem and travel pay are included in the baseline of Labor Costs from which the Equipment Fee is calculated. As discussed extensively during argument, romanette three (iii) specifically pulls both travel pay and per diem into the definition of Labor Costs. Paragraph F.1 also specifically states that travel expenses and per diem are a part of Labor Costs. Accordingly, by the plain language of the Contract, both travel pay and per diem are included in Labor Costs and thus used to calculate the Equipment Fee. And, as the definition of Labor Costs is only used to calculate the Equipment Fee, any other reading is unnatural.

In light of the specifically defined terms, the fact that travel pay and per diem are expenses cannot change the result. Nothing in the law prohibits parties from defining terms as they choose. Here, had the parties not wanted Labor Costs to include the items listed in romanette (iii), whether they be denominated benefits or expenses under the Contract, they should not have been included. There is simply no way to read out the list of items included in romanette (iii).

Perhaps recognizing that the literal language of the Contract includes travel pay and per diem in Labor Costs, Transco points to what it believes are limiting words in both the definition of Labor Costs and Equipment Fee. Specifically, Transco points to the words "for actual Work performed" and suggests that, somehow, being paid a per diem or for travel are not compensation for actual work. Transco points to nothing in the Contract (or otherwise) to support this position, nor does it ring true from an ordinary definition of work. Moreover, Transco admits that it has to reimburse Welded for both per diem and travel pay. And, under the Contract, both are reimbursable "in connection with Work performed." See for example, Paragraph F 2, F 3, G.

Finally, at argument, I asked counsel what purpose romanette (iii) of the definition of Labor Costs would serve if it was not included as part of the baseline for determining the Equipment Fee. The only response was that Welded might need romanette (iii) in the definition of Labor Costs in order to ensure that it is paid for each of the listed categories. Welded, however, takes the position I have adopted, namely that the definition of Labor Costs exists for one purpose – as the baseline for a determination of the Equipment Fee. Further, the contract never uses the word Labor Costs to define what the parties agreed Transco would pay under the Contract. Rather, all of the categories of benefits/expenses that Transco must pay under the Contract are picked up in Section VIII paragraphs D-G.

The parties were free to agree to whatever formulation they chose to arrive at the definition of Equipment Fee. Had the parties wanted to exclude some category of benefit or

---

[2] Contract, Section VIII, Article 2A.

3

expense from Equipment Fee, it would have been easy enough to do so. In fact, the parties did. Paragraph D.4 provides that "Company shall pay no Equipment Fee in connection with Work performed prior to mobilization." Had Transco wanted to exclude per diem and travel pay from Equipment Fee, a simple declarative sentence, such as the one above, would have done the trick. Instead, arguing that romanette iii was included simply to exclude the listed categories from inclusion in the Equipment Fee because those items are not for "actual Work performed" or some other reason makes no sense. To rewrite the definition of Labor Costs to somehow be consistent with what one party now believes to be the nature of the contract – which was admittedly bespoke—is not appropriate. The arguments made by Transco are too far a stretch.

As there are no material facts in dispute, summary judgment on this issue is granted in favor of Welded.

**Issue 2:** **Treatment of Mechanics under the Contract**

The second issue addresses reimbursement under the Contract for Work performed by mechanics. First, Welded asserts that it is entitled to reimbursement from Transco for mechanic work on Included Equipment. Welded looks to Section VIII, Article 2 Paragraph D and several exhibits to Section VIII as well as the definition of Labor Costs. Second, Welded argues that Labor Costs includes Work performed by mechanics and, as such, it is included in the basis of the Equipment Fee calculation.

Transco looks to other provisions of the Contract. Transco starts with the purpose of the Equipment Fee, which is set forth in Article 2 Paragraph E.1 of Section VIII. That paragraph states that Welded shall "provide and supply" all Included Equipment in connection with the Work, and that "The Equipment Fee shall cover the cost, expense, overhead, profit and all compensation due and payable to Contractor in connection with the *provision and supply* of Included Equipment." Transco argues "provision and supply" must include all labor necessary to maintain and repair the Included Equipment, which is what mechanics do. Thus, Transco concludes that Work by mechanics is not part of Labor Costs or included for purposes of calculating the Equipment Fee.

Again, both parties assert that the Contract is unambiguous.

**Conclusion 2**

Once, again, the Contract provides the answer. Section VIII Article 2 Paragraph D specifies how Transco will compensate Welded for labor, which, per the contract, includes manual labor, professional services, management, supervision and/or consultation. For compensation purposes, Paragraph D divides persons who provide labor into four categories: NPLA Personnel, Field Personnel, Home Office Personnel and Subcontractors. Each of NPLA Personnel, Field Personnel, Home Office Personnel and Subcontractor is defined in Paragraph A.

4

In the Opening Brief, Welded identifies the mechanics at issue as NPLA Personnel. Transco does not dispute this in its Answering Brief. To this end, I note that the NPLA International Union of Operating Engineers agreement referenced in Exhibit 3 to Section VIII provides at page 308 that there will be a master mechanic in charge of all equipment on the job and at page 327, the agreement references "mechanic helpers." Further, the National Pipe Line Agreement at page 110 classifies Truck Mechanics in Group 1 and also mentions mechanics at page 122. Thus, under Paragraph D.1 of Section VIII, Transco is to compensate Welded for Work performed by NPLA Personnel who are mechanics at the rates established by the NPLA.

Transco does not really take issue with this analysis. Rather, Transco relies on a different portion of Section VIII. It argues that the cost of mechanics is covered by the Equipment Fee. Transco turns to paragraph E, which states that "Compensation for Contractor-provided equipment, materials, supplies and/or consumables shall be paid in accordance with this Paragraph E. And, then Transco specifically relies on Paragraph E.1 which states: "Contractor shall provide and supply all Included Equipment in connection with the Work. The Equipment Fee shall cover the cost, expense, overhead, profit and all compensation due and payable to Contractor in connection with the provision and supply of Included Equipment." Transco asserts that the cost of maintaining and repairing the Included Equipment, including the cost of labor to do so (i.e. the mechanics), were expenses incurred in connection with the *provision and supply* of the Included Equipment. Transco argues that to both pay the Equipment Fee and to pay separately for mechanics who maintain and repair the Included Equipment is double payment.

There are at least three problems with Transco's analysis. First, the word labor is nowhere included in Paragraph E.1. As just recited, the list of what is covered under Paragraph E is equipment, materials, supplies and/or consumables, but not labor. Second, the words "maintaining and repairing" do not appear in the list of what the Equipment Fee covers. Rather, Transco reads those words into the sentence as what it believes is a necessary component of "provision and supply." But, those words could easily have been written into Paragraph E.1. They were not. Third, as already discussed, compensation for manual labor, and in particular NPLA Personnel is specifically addressed in Paragraph D. Had the parties wanted to exclude mechanics from the definition of NPLA Personnel, they could have done so.

Accordingly, I conclude that, under the Contract, Transco is to compensate for work performed by mechanics who are NPLA Personnel as NPLA Personnel, not as part of the Equipment Fee. I will not read mechanics into Paragraph E where they are clearly included in Paragraph D. Summary judgment on this issue is granted in favor of Welded.

This conclusion necessarily leads to the further conclusion that work performed by mechanics is part of the baseline against which the Equipment Fee is calculated as mechanics are NPLA Personnel. This is a straightforward application of the definition of

Equipment Fee. Once it is determined that mechanics are NPLA Personnel, their compensation becomes part of the determination of the Equipment Fee. Summary judgment on this issue is also granted in favor of Welded.

Finally, on this second issue. After the briefing and argument on the summary judgment motion was complete, Transco moved to supplement its opposition suggesting that it was responding to a question I posed at argument. The supplement is a January 16, 2018 email with the subject line ASR: Billable Vs. Non-Billable List. Welded objected to Transco's request to supplement arguing that the submission comes too late as the document was produced years ago and used in deposition and that Transco's submission runs counter to Transco's argument that the Contract is unambiguous. Welded also points out that this email does not reflect a decision by Welded on what was, in fact, billable under the Contract.

I agree that the request to supplement comes too late and deny it on that ground. I also note, however, that given my ruling which is made on a plain reading of the Contract, the email is irrelevant.

**Issue 3:**   **Claim Related to Subcontractors and Suppliers paid by surety**

The third issue on summary judgment is a request by Welded for a ruling that Transco has no claim for contribution based on the nonpayment of subcontractors and suppliers on the project. Transco counters that Welded has not shown by competent evidence that Transco has no claims based on payments owed that Welded did not pay and suggests that there is still some damage claim based on expenses invoiced to Transco that were not incurred.

**Conclusion 3**

While I am highly skeptical that Transco has some claim based on the delay in payments to subcontractors or suppliers and/or payments made by Federal Insurance Company to subcontractors or suppliers, the theories of recovery have not been sufficiently briefed to rule. At trial, Transco will have the burden on any such claims and damages, and it is more appropriate to rule in that context than on summary judgment on Issue 3.

For that reason, summary judgment on the third issue is denied.

Dated: August 4, 2023

*Laurie Selber Silverstein*
Laurie Selber Silverstein
United States Bankruptcy Judge